into the partly built cabin, and that he could not have procured the pre-emptive right to the quarter section, had Majors claimed it, and had all the facts been represented to the register and receiver of the land office. Majors was entitled to the possession of the improvement, so far as it was made by him. But he relinquished his right, as appears from the testimony, and settled upon another quarter in the neighborhood. This abandonment left John Stanley in possession of the improvement, and he made the house habitable by cutting out the door and putting a roof on it.

But the inquiry for the jury is not as to this particular matter, but whether the defendant was guilty of wilful and corrupt perjury. It does not appear that he had any knowledge who had constructed the pen of the cabin, but he knew that his brother had cut out the door and put on the roof. And he objected to swearing to the written affidavit, it appears, until his friends, and especially the lawyer, who was a connection of his, advised him to swear to it, as it embraced only the facts substantially as stated by him. If you believe, gentlemen, that he yielded to this influence in swearing to the paper, and that in his repeated relations he gave a true statement of the facts as they transpired, according to his knowledge of them, he is not guilty of perjury. To constitute perjury there must be a wilful and corrupt statement of a falsehood, material to the matter in hand. You are to determine the facts in the case, and judge of the guilt of the defendant. He has shown an excellent character, and this, under the circumstances, and indeed under all circumstances where the evidence of guilt is not clear, will receive due consideration by a jury.

Verdict of not guilty.

---

## Case No. 16,377.

UNITED STATES v. STANWOOD.

[See Case No. 15,130.]

---

## Case No. 16,378.

UNITED STATES v. STARK et al.

[15 Int. Rev. Rec. 48; 11 Am. Law Reg. (N. S.) 37; 6 Am. Law Rev. 573.]

District Court, D. Georgia. Nov. 27, 1871.

CUSTOMS DUTIES — IMPORTATIONS AT PORTS CONTROLLED BY INSURGENTS—LIABILITY TO DUTIES.

[1. Neither the fact that a port of the United States is under the control of an insurgent body, such as the so-called Confederate States, nor the fact that the government of the United States had conceded belligerent rights to the insurgents, will operate to suspend the revenue laws so as to relieve goods there imported from the payment of duties to the United States. Distinguishing U. S. v. Hayward, Case No. 15,336, and U. S. v. Rice, 4 Wheat. (17 U. S.) 247.]

[2. Nor was any such effect produced by the president's proclamation of April 19, 1861 (12 Stat. 1258), declaring a blockade of certain ports in the rebellious states; and any cargoes which managed to evade the blockade were still subject to the duties prescribed by law.]

This action was brought to recover of defendants [William H. Stark and others] the sum of $959.04, the duties on two hundred and sixty-six hogsheads and forty-one barrels of molasses, valued at $3,996, imported by the defendants into the port of Savannah on the 7th day of May, 1861. The defendants pleaded the general issue, and payment of the duties. The case was submitted to the jury on the following agreed facts: The goods were imported into the port of Savannah by the defendants at the time named in the declaration, and the amount of duties was as stated in the declaration, and they had never been paid to the United States. John Boston, United States collector of customs at the port of Savannah, resigned his said office on the 31st day of January, 1861, and he was collector of customs for the Confederate States at the port of Savannah at the time of the importation of the goods mentioned in the declaration. At that time the port of Savannah was in the paramount forcible military possession of the Confederate authorities, and by such paramount military authority the United States government, both civil and military, was excluded. The duties on said goods were paid to the collector of customs of the Confederate government.

John D. Pope, U. S. Dist. Atty.
Law, Lovell & Falligant, for defendants.

Before WOODS, Circuit Judge, and ERSKINE, District Judge.

WOODS, Circuit Judge (charging jury). The facts in this case are all agreed upon, so that there is nothing for you to do but to return a verdict as instructed by the court. By the act of congress of July 30, 1846 (9 Stat. 42), § 1, it is provided that there shall be levied, collected, and paid on goods, wares, and merchandise imported into the United States from a foreign country, the duties prescribed by the act. The United States is therefore entitled to recover in this action, unless the defendants present some valid reason why they should be relieved from the payment of the duties on the goods imported by them.

Defendants insist that the agreed facts and public history, of which the court takes judicial notice, shows such a state of affairs, that at the time of the importation they were under no obligation to pay duties to the United States. They say that the Confederate States, being a belligerent power at war with the United States, and holding by military force territory captured from the United States, acquired a sovereignty